# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:14-cv-98-FDW

| | |
|---|---|
| TERRENCE JAVARR ROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| RANDY CONNER, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1); on Plaintiff's two separate Motions to Appoint Counsel, (Doc. Nos. 3; 9); on Plaintiff's Motion for Order to Show Cause, Motion for Preliminary Injunction, and Motion for Temporary Restraining Order, (Doc. No. 4); and on Plaintiff's Motion to Show Cause for a Preliminary Injunction, and Motion for Temporary Restraining Order, (Doc. No. 10).

## I.  BACKGROUND

Pro se Plaintiff Terrence Javarr Ross, a North Carolina state court inmate currently incarcerated at Mountain View Correctional Institution in Spruce Pine, North Carolina, filed this action on April 21, 2014, pursuant to 42 U.S.C. § 1983. On June 19, 2009, Plaintiff was convicted of, among other things, being a habitual felon in Cleveland County Superior Court. Here, Plaintiff brings various claims against Defendants, including excessive force in violation of his constitutional right not to be subjected to cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution, failure to protect in violation of the Eighth Amendment,

1

and unreasonable search and seizure in violation of the Fourth Amendment, arising out of an alleged incident on May 14, 2013, when Defendant Conner allegedly used excessive force against Plaintiff and tried to extract DNA from Plaintiff through the use of force and without a search warrant that allowed use of force. In his Complaint, Plaintiff names the following persons as Defendants: (1) Randy Conner, identified as a detective with the Shelby Police Department; (2) Derwin Briscoe, identified as a captain in the Cleveland County Sheriff's Department; (3) Officer Mason, identified as a detention officer with the Cleveland County Sheriff's Department; (4) Officer Piercy, identified as a detention officer with the Cleveland County Sheriff's Department; (5) Duane D. Terrell, identified as an administrator with Marion Correctional Institution; and (6) Captain McLaughlin, identified as a captain with Marion Correctional Institution.

Specifically, Plaintiff alleges in the Complaint that on May 6, 2013, Defendant Randy Conner came to Marion Correctional Institution where Plaintiff was incarcerated. (Doc. No. 1 at 4). Plaintiff was told someone wanted him in medical. Plaintiff went to medical, where he was told to go into one of the exam rooms. Plaintiff walked into an exam room, where Defendant Conner told him that he had come to get a DNA sample from Plaintiff to test a gun found in 2008. (Id. at 4). Plaintiff informed Defendant Conner that he already gave a DNA sample. Defendant Conner told Plaintiff that he "can give it to me now or I'll get you back to Shelby and beat it out of you." (Id. at 5). Plaintiff refused again. Defendant Conner then attempted to have the corrections staff assist him in taking a DNA sample by force. The corrections staff refused and Defendant Conner then left the prison. When Plaintiff returned to his cell he notified Defendant McLaughlin, the officer in charge, about what had taken place and asked about what process would need to be taken to press charges against Defendant Conner for the threats he

2

made against Plaintiff.

Plaintiff alleges that on May 14, 2013, he was brought to Cleveland County on a writ of habeas corpus ad prosequendum. (Id. at 6). When Plaintiff arrived at the county jail, he contacted his court-appointed lawyer Thomas Wilson, who informed Plaintiff that he had not been made aware that Plaintiff was being brought back on a writ. (Id.). Plaintiff alleges that, on that same day, Defendant Mason came to Plaintiff's cell, shackled him, and told him someone was there to see him. Defendant Mason walked Plaintiff up front and sat him on a bench in front of the control room. Defendant Conner exited the control room and then put Plaintiff in handcuffs. (Id. at 6). Defendant Conner then gave Plaintiff what Conner said was a court order for Plaintiff's DNA. Plaintiff refused to give his DNA. Defendant Conner grabbed Plaintiff by the arm and tried to make him go with him by force. (Id. at 7). Defendant Conner instructed Defendants Mason and Piercy to grab Plaintiff. Plaintiff was still seated on the bench, fully handcuffed and shackled. (Id.). Defendant Mason held Plaintiff down on his left side, and Defendant Piercy held Plaintiff down on the right side. Defendant Conner grabbed Plaintiff by his nose, cutting off his oxygen supply. Defendant Conner then beat Plaintiff's head into a cement wall numerous times and he then struck Plaintiff in the face numerous times with a closed fist. (Id. at 8).

Plaintiff alleges that, throughout the entire incident, Plaintiff informed Defendants Mason and Piercy that what they were doing was contrary to the law. Defendant Conner got back on the elevator and left. Defendant Mason instructed Defendant Piercy to call someone. Several minutes later, Defendant Piercy returned, informing Defendant Mason that he had spoken with Defendant Captain Briscoe. Defendant Briscoe had stated that what Plaintiff had told them was the truth—i.e., that Conner was not allowed to use force against Plaintiff to obtain DNA. (Id. at

3

9). Defendant Conner then returned and stated, "You ready for some more?" Defendant Mason informed Defendant Conner that he would not be allowed to touch Plaintiff again. (Id.). At that point, Defendant Conner screamed, "It does not matter if I have to lose my job. You're going to spend the rest of your life in prison." (Id.).

Plaintiff alleges that on May 14, 2013, while serving lunch in cell block B-2, Defendant Mason looked at his cell phone and stated, "I had to turn my phone off he was calling so much. This ain't the first time this has happened. Last time I had to fight him. He's probably going to be at my house waiting on 'me.'" (Id.). Plaintiff alleges that on May 15, 2013, Defendant Briscoe told Plaintiff that what took place the day before was contrary to the law. (Id. at 9-10). While back in Cleveland County on a writ, Plaintiff requested to be able to press charges against the Defendants who were involved in the assault. Lieutenant Stearns told Plaintiff that, per direct orders from Defendant Briscoe, Plaintiff would not be able to press charges. (Id. at 10).

Based on the above factual allegations, Plaintiff purports to bring various legal claims against Defendants. As to Defendant McLaughlin, Plaintiff alleges that McLaughlin failed to protect Plaintiff from a substantial risk of harm from Conner, in violation of Plaintiff's Eighth Amendment rights. (Id. at 13). As to Defendant Briscoe, Plaintiff alleges that, as captain and head administrator over the Cleveland County Detention Center, Defendant Briscoe administered policy and was complacent with the work environment directly under his control; thus, allowing the beating of Plaintiff by Conner, in violation of Plaintiff's Eighth Amendment rights. (Id. at 14). As to Defendants Mason and Piercy, Plaintiff alleges that they used excessive force against Plaintiff when they restrained him on Conner's orders, and that they are both liable for

failing to intervene when Defendant Conner began beating Plaintiff, in violation of Plaintiff's Eighth Amendment rights. (Id. at 15). As to Defendant Conner, Plaintiff alleges that Defendant Conner's use of force in an attempt to extract a DNA sample was an unreasonable search and seizure in violation of Plaintiff's Fourth Amendment rights. (Id. at 16). Plaintiff also alleges that Defendant Conner used excessive force, as Plaintiff "was fully restrained in handcuffs and shackles at the time he was beaten by Defendant Randy Conner." (Id.). Finally, as to Defendant Terrell, Plaintiff alleges that Defendant Terrell is liable for failing to investigate the incident and for failing to protect Plaintiff from a substantial risk of harm, in violation of Plaintiff's Eighth Amendment rights. (Id. at 17-18). Plaintiff states that even after he filed his grievance based on the alleged beating, he was sent back to the Cleveland County Detention Center twice on an application and writ of habeas corpus ad prosequendum, where he was again exposed to the same risk of harm. (Id. at 18). Plaintiff seeks declaratory relief as well as compensatory and punitive damages. (Id. at 19).

## II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such

as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

#### A. Initial Review of Plaintiff's Claims

#### 1. Plaintiff's Eighth Amendment Claims against all Defendants

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

Plaintiff brings various Eighth Amendment claims against Defendants based on excessive force, failure to protect, and failure to intervene. First, as to the excessive force claims against the various Defendants, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S.

34, 38 (2010). In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 37-38 (citations omitted).

As for Plaintiff's claims based on failure to protect and failure to intervene against the various Defendants, the Supreme Court has held that prison officials' negligent failure to protect an inmate from assaults by other prisoners does not rise to the level of an unconstitutional violation. Davidson v. Cannon, 474 U.S. 344, 348 (1986). To show deliberate indifference, a plaintiff must allege that the prison official had actual knowledge of an excessive risk to the plaintiff's safety. Danser v. Stansberry, No. 13-1828, 2014 WL 2978541, at *5 (4th Cir. Sept. 12, 2014). In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Court first finds that Plaintiff's claims do not survive initial review as to Defendants Terrell, Briscoe, or McLaughlin. First, as to Defendant Terrell, who was the administrator at Marion Correctional Institution at all relevant times, Plaintiff does not allege any personal involvement by Defendant Terrell, and he cannot be held liable for the alleged acts of the other officers because liability under § 1983 cannot be based on respondeat superior. See Monell v.

7

Department of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply). Although Plaintiff alleges that Defendant Terrell failed to investigate the matter, there was, in fact, an investigation into the matter as a result of the filing of Plaintiff's grievance. Furthermore, although Plaintiff suggests that Defendant Terrell should be held liable for failure to protect because after the alleged beating incident Plaintiff was returned to the Cleveland County Detention Center, Plaintiff does not allege that he was harmed in any way as a result of this. In sum, Defendant Terrell will be dismissed as a defendant on initial review.

Next, as to Defendant McLaughlin, who was at all relevant times the incident supervisor and officer in charge at Marion, Plaintiff alleges that he complained to McLaughlin after Conner came to Marion Correctional Institution on May 6, 2013, seeking a DNA sample from Plaintiff. Plaintiff alleges that he asked McLaughlin what he needed to do to press charges against Defendant Conner for communicating threats. Plaintiff alleges that McLaughlin is liable for failing to take measures to protect Plaintiff after Plaintiff complained about Conner's threats. Here, Plaintiff has simply not alleged that Defendant McLaughlin has knowledge of an excessive risk to Plaintiff's safety and that he was deliberately indifferent to that risk. At most, Plaintiff alleges that Defendant's lack of action following Plaintiff's complaint about Conner constituted negligence, and this is not enough to constitute an Eighth Amendment violation for failure to protect. Thus, McLaughlin will be dismissed as a defendant.

Next, as to Defendant Briscoe, who was the head administrator of the Cleveland County detention centers at all relevant times, the only personal participation alleged as to Briscoe is that, after Conner allegedly beat Plaintiff, Briscoe informed officers Mason and Piercy that Plaintiff was right in stating that what Conner was doing was unlawful. Here, Plaintiff simply

does not allege facts giving rise to a claim against Briscoe for failure to protect Plaintiff from a substantial risk of harm. Thus, Briscoe will be dismissed as a defendant.

Finally, as to Defendants Mason and Piercy, taking Plaintiff's allegations as true for the purposes of initial review, the Court finds that Plaintiff states an Eighth Amendment claim against Mason and Piercy based on excessive force and failure to intervene. Plaintiff has also sufficiently stated a claim against Defendant Conner for excessive force in violation of the Eighth Amendment.

### 2. Plaintiff's Fourth Amendment Claim against Defendant Conner

In addition to bringing an excessive force claim against Defendant Conner, Plaintiff also alleges that Defendant Conner violated Plaintiff's Fourth Amendment rights based on an unreasonable search and seizure. As noted, Plaintiff alleges that Conner restrained him and used excessive force against Plaintiff in an attempt to extract DNA from Plaintiff. Plaintiff alleges that Conner showed him a warrant that Conner said authorized him to take Plaintiff's DNA, but Plaintiff alleges that the warrant did not allow the use of force in extracting DNA. Plaintiff alleges that after he refused to give Conner his DNA, Conner then restrained and beat Plaintiff in an attempt to extract DNA from Plaintiff. Here, taking Plaintiff's allegations as true, and drawing all inferences in his favor, the Court finds that Plaintiff has stated a Fourth Amendment claim for unreasonable search and seizure against Defendant Conner.[1] See United States v.

---

[1] The Court recognizes the holding by the Fourth Circuit Court of Appeals in Rendelman v. Scott, 378 Fed. Appx. 309, 313, 2010 WL 2000976, at *3 (4th Cir. 2010), that the "the State's right to obtain the DNA sample from designated inmates must necessarily carry with it the right to use a reasonable degree of force that is sufficient to ensure compliance." See also United States v. Bullock, 71 F.3d 171, 175-77 (5th Cir. 1995) (holding that use of force to obtain blood and hair samples from a criminal suspect for DNA purposes did not violate the Fourth Amendment and noting that the suspect had no right to refuse to comply with the search warrant). Here, if Defendant Conner had a valid search warrant allowing him to extract

Kincade, 379 F.3d 813, 821 n.15 (9th Cir. 2004) (observing that a compelled DNA extraction is a "search" for Fourth Amendment purposes).

### B. Plaintiff's Motion to Appoint Counsel

Next, as for Plaintiff's two motions to appoint counsel, Plaintiff alleges that the prison where he is incarcerated has no law library, that he has limited knowledge of the law, that the issues are complex, and that he has been unable to obtain an attorney on his own to represent him. See (Doc. Nos. 3; 9). There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Notwithstanding Plaintiff's contentions to the contrary, Plaintiff has not shown exceptional circumstances justifying appointment of counsel at this time. Therefore, Plaintiff's motions to appoint counsel will be denied. If this action proceeds to trial, however, the Court will consider appointment of counsel to represent Plaintiff during the trial proceedings.

### C. Plaintiff's Motion to Show Cause for a Preliminary Injunction, and Motion for Temporary Restraining Order

Finally, as to Plaintiffs' two motions for a preliminary injunction (and a motion for temporary restraining order), a preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517,

---

Plaintiff's DNA then Defendant Conner would have had the right to use reasonable force in order to ensure compliance with the search warrant. However, here, Plaintiff specifically alleges that Defendant Conner used excessive force. Furthermore, there is simply not enough information before the Court to adjudicate the Fourth Amendment claim on Plaintiff's Complaint alone because the search warrant was not attached to the pleadings.

524-26 (4th Cir. 2003). It is an extraordinary remedy never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009).

First, Plaintiff seeks an order from the Court prohibiting Defendants "from contacting and or interacting with [Plaintiff] short of impeding judicial hearings or the judicial process." (Id.). Reviewing Plaintiff's motion based on the above factors, Plaintiff is not entitled to a preliminary injunction from the Court ordering Defendants to have no contact with him or interact with him during the course of this action. Here, Plaintiff has been transferred from Marion Correctional Institution to Mountain View Correctional Institution in Spruce Pine, North Carolina. Plaintiff is incarcerated, which means that he is not likely to have contact with Defendants, most of whom are in Shelby, North Carolina. The Court has considered the four relevant factors in determining whether to issue a preliminary injunction, and the Court finds that these factors do not warrant a preliminary injunction. Most significantly, Plaintiff has not shown he is likely to suffer irreparable harm in the absence of preliminary relief. Thus, the Court will deny Plaintiff's motion for an order prohibiting Defendants from contacting Plaintiff during this action.

In support of his motions for a preliminary injunction, Plaintiff also states that he seeks an order from the Court ordering Defendants not to destroy any surveillance video evidence of the incident on May 14, 2013. (Doc. No. 4 at 2). In the motion, Plaintiff states that Marion Correctional Institution has a policy of destroying surveillance video evidence within one year of the recording. Plaintiff seeks an order from this Court ordering Defendants not to destroy any surveillance video. The Court find that an order requiring Defendants not to destroy video evidence is unnecessary because Defendants already have a duty to preserve evidence. Under the doctrine of spoliation, parties have a duty to preserve (including a duty to not destroy) evidence when litigation is filed or becomes reasonably anticipated. See Silvestri v. Gen. Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001); Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 509 (D. Md. 2009). To fulfill the duty to preserve relevant evidence, "[o]nce a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a "litigation hold" to ensure the preservation of relevant documents." Id. at 511. Here, if Defendants destroy any exculpatory evidence they will be subject to sanctions. However, because they are already under a duty to preserve evidence, an order from this Court is not necessary. Accord Wright v. Webber, C/A No. 1:11-2199-TLW-SVH, 2011 WL 6112371, at *3 (D.S.C. Nov. 10, 2011) ("Plaintiff has not shown that he will suffer irreparable damage if an injunction does not issue, as Defendants already have a legal duty to preserve existing evidence when a lawsuit is filed."); McNair v. Ozmint, C/A No. 3:07-3470-HFF-JRM, 2008 WL 2128121, at *4 (D.S.C. May 20, 2008) (denying a motion for a temporary restraining order to preserve cassette tapes because there already existed a duty to preserve material evidence).

### IV.     CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. §

1915A, as to Defendants Conner, Mason, and Piercy, but the remaining Defendants will be dismissed.[2]  Furthermore, Plaintiff's motions to appoint counsel and motions for a preliminary injunction and for a temporary restraining order are denied.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint, (Doc. No. 1), survives initial review under § 1915(e) and 28 U.S.C. § 1915A as to Defendants Conner, Mason, and Piercy.  The remaining Defendants are dismissed from this action.

2. Plaintiff's Motions to Appoint Counsel, (Doc. Nos. 3; 9), are **DENIED**.

3. Plaintiff's Motion for Order to Show Cause, Motion for Preliminary Injunction, and Motion for Temporary Restraining Order, (Doc. No. 4), and Plaintiff's Motion to Show Cause for a Preliminary Injunction and Temporary Restraining Order, (Doc. No 10) are **DENIED**.

4. The Clerk shall send Plaintiff summons forms to fill out so that service may be made on Defendants Conner, Mason, and Piercy.  Once the Court receives the summons, the U.S. Marshal shall effectuate service on Defendants at the addresses provided by Plaintiff.

Signed: October 15, 2014

Frank D. Whitney
Chief United States District Judge

---

[2]  This ruling does not prevent Defendants from moving to dismiss this action based on any affirmative defenses, abstention principles, etc.  Furthermore, although the Court does not have sufficient information before it to determine the issue at this stage, Plaintiff's claims may be in part or in whole barred by the principles in Heck v. Humphrey, 512 U.S. 477 (1994).