# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:14-cv-98-FDW

| | |
|---|---|
| TERRENCE JAVARR ROSS, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| RANDY CONNER, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Franklin Mason and Jordan Piercy, (Doc. No. 99); on Defendant Randy Conner's Motion for Summary Judgment, (Doc. No. 101); on Plaintiff's Motion for Summary Judgment, (Doc. No. 107); and on Plaintiff's Motion Requesting Leave to Amend Summary Judgment upon Receipt of Discovery Material, (Doc. No. 108).

## I. BACKGROUND

### A. Procedural Background

Pro se Plaintiff Terrence Javarr Ross, a North Carolina state court inmate currently incarcerated at Mountain View Correctional Institution in Spruce Pine, North Carolina, filed this action on April 21, 2014, pursuant to 42 U.S.C. § 1983. On June 19, 2009, Plaintiff was convicted in Cleveland County Superior Court of, among other things, being a habitual felon, possession with intent to sell or deliver Schedule II controlled substances; sale of Schedule II controlled substances; solicitation of bribery; and obstruction of justice. In this action, Plaintiff brings various claims against Defendants, including excessive force in violation of his

1

constitutional right not to be subjected to cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution, failure to protect in violation of the Eighth Amendment, and unreasonable search and seizure in violation of the Fourth Amendment, arising out of an alleged incident on May 14, 2013, when Defendant Conner used force against Plaintiff in an attempt to obtain Plaintiff's DNA with a buccal swab.

In his Complaint, Plaintiff named the following persons as Defendants: (1) Randy Conner, identified as a detective with the Shelby Police Department; (2) Derwin Briscoe, identified as a captain in the Cleveland County Sheriff's Department; (3) Officer Mason, identified as a detention officer with the Cleveland County Sheriff's Department; (4) Officer Piercy, identified as a detention officer with the Cleveland County Sheriff's Department; (5) Duane D. Terrell, identified as an administrator with Marion Correctional Institution; and (6) Captain McLaughlin, identified as a captain with Marion Correctional Institution. On October 15, 2014, the Court conducted a frivolity review, allowing Plaintiff's claims to proceed against Defendants Mason, Piercy, and Conner. (Doc. No. 12). The Court ruled that Plaintiff stated a claim for excessive force against all three Defendants, and that Plaintiff stated a separate claim for failure to intervene against Defendants Mason and Piercy.

On August 20, 2015, Defendants Piercy and Mason filed a summary judgment motion. On August 21, 2015, Defendant Conner filed a summary judgment motion. On August 26, 2015, Plaintiff filed his own summary judgment motion, accompanied by a motion requesting leave to amend the summary judgment motion following receipt of videotape footage of the incident in question.

      B.      <u>Factual Background</u>

      1.      <u>The Alleged Excessive Force Incident and the Summary Judgment Evidence</u>

a. <u>Plaintiff's Allegations and Evidence on Summary Judgment</u>

By his verified Complaint, Plaintiff alleges that on May 6, 2013, Defendant Conner went to Marion Correctional Institution, where Plaintiff was incarcerated as an inmate. (Doc. No. 1 at ¶ 11). Plaintiff was brought from his cell to meet with Defendant Conner in the Institution Medical Area, at which time Defendant Conner informed Plaintiff that he needed a DNA sample to test a gun relating to a 2008 crime of discharging a firearm into an occupied dwelling. (<u>Id.</u> at ¶ 15). Plaintiff contends that when he refused to cooperate, Defendant Conner threatened to bring him back to Shelby and "beat" it out of him and that Conner also tried to get the officials at Marion to help him get a DNA sample from Plaintiff by force. (<u>Id.</u> at ¶¶ 17; 19).

On May 14, 2013, Plaintiff was transferred to the Cleveland County Detention Center on a writ for additional criminal charges. On that day, Defendant Conner went to the detention center and presented Plaintiff with a court order authorizing the taking of a buccal swab to obtain Plaintiff's DNA. (<u>Id.</u> at ¶ 27). Plaintiff alleges that when he again refused to cooperate, co-Defendants Mason and Piercy held him down, while Defendant Conner obstructed his oxygen supply. (<u>Id.</u> at ¶¶ 33-34). According to Plaintiff, he was "fully restrained in handcuffs and shackles" and sitting on a bench during the entire incident. (<u>Id.</u> at ¶¶ 24-26; 58). Plaintiff alleges that Defendant Conner then "beat the plaintiff head [sic] into a cement wall numerous times. Then struck the plaintiff in the face numerous times with a closed fist." (<u>Id.</u> at ¶ 35). After Defendants Mason and Piercy declined to assist further, Defendant Conner allegedly informed Plaintiff "It dose [sic] not matter if I have to loose [sic] my job. You're going to spend the rest of your life in prison." (<u>Id.</u> at ¶¶ 41-42). As for the injuries sustained from the use of force against him, Plaintiff contends that he suffered nausea, a headache, and knots on his head. <u>See</u> (Doc. No. 99-3 at 15: Pl. Dep.).

3

b. <u>Defendants' Summary Judgment Materials</u>

Defendants' summary judgment materials show that, in April 2014, the Shelby Police Department was assisting the Cleveland County District Attorney's Office with the investigation of a 2008 crime of discharging a firearm into an occupied dwelling. (Doc. No. 102 at ¶ 4: Conner Aff.; Doc. No. 103 at ¶ 4: Duncan Aff.). Plaintiff was the prime suspect in the shooting. The Assistant District Attorney responsible for the case requested the police department to send a .410 shotgun used in the crime to the SBI Lab for analysis and comparison to Plaintiff's DNA. (Doc. No. 102 at ¶ 4; Doc. No. 103 at ¶ 5).

Defendant Detective Conner was assigned to crime scene duties, including forensic testing. (Doc. No. 102 at ¶ 4). Defendant Conner's supervisor Sergeant Duncan directed Conner to obtain a DNA sample from Plaintiff for comparison to DNA left on the .410 shotgun. (<u>Id.</u> at ¶ 4). Defendant Conner first asked the SBI Lab whether DNA samples provided by inmates upon incarceration could be used for comparison testing of DNA on physical evidence.[1] (<u>Id.</u> at ¶ 5). SBI Lab personnel informed Defendant Conner that he would need to obtain and submit a separate DNA sample for such comparison.

Defendant Conner then consulted with Sara Kirby-Turner, a Cleveland County Assistant District Attorney, who directed him to meet with Plaintiff to obtain a DNA sample via a buccal swab. Kirby-Turner advised Conner that Plaintiff could not refuse the request given his status as an inmate. (Doc. No. 102 at ¶ 6). Defendant Conner went to Marion Correctional Institution on May 6, 2013, and informed Plaintiff that he needed a DNA sample, but Plaintiff refused to cooperate. Defendant Conner sought assistance from correctional staff at the prison, but they

---

[1] The SBI Lab is the custodian for the Combined DNA Index System ("CODIS") in North Carolina.

told him he would need a court order before they could assist him.

Defendant Conner reported this information to the Assistant District Attorney, who subsequently obtained an order from Cleveland County Superior Court Judge James Morgan on May 7, 2013, requiring Plaintiff to submit a DNA buccal swab sample. (Doc. No. 102-4: Court Order). The Order stated:

> THIS MATTER coming on to be heard and being heard before the undersigned Judge of the Superior Court upon the sworn petition of . . . [the Assistant District Attorney], and the Court finds the following facts:
>
> (1) The Office of District Attorney, in conjunction with the Shelby Police Department, has previously charged Terrance Ross with Discharging a Firearm into Occupied Property.
> (2) During the course of the investigation, investigators found a .410 shotgun. In an effort to confirm the identity of the suspect and corroborate witness statements, officers would like to test the DNA of the suspect with the shotgun that was found.
> (3) On May 6, 2013, Det. Randy Conner went to Marion Correctional Center to obtain a DNA sample from Terrance Ross, and Terrance Ross refused to provide a DNA sample.
> (4) It would be in the best interests of justice for Det. Sgt. Carl Duncan with Shelby Police Department to obtain a DNA sample from Terrance Ross and that the sample (swab) be submitted to the SBI lab for analysis with any DNA found on the gun. This DNA sample (swab) should be made available to Det. Sgt. Carl Duncan with the Shelby Police Department immediately upon service of an order directing the defendant to provide a DNA sample.
>
> IT IS THEREFORE ORDERED that Terrance Ross submit a DNA sample and that such sample immediately be made available to Det. Sgt. Carl Duncan with the Shelby Police Department upon service of this order.

(Doc. No. 102-4 at 2). The Assistant District Attorney advised Defendant Conner that Plaintiff would be transferred from Marion Correctional Institution to the Cleveland County Detention Center to face additional charges and that Conner could serve the order on Plaintiff after the transfer. (Doc. No. 102 at ¶ 10).

On May 14, 2013, Defendant Conner went to the Cleveland County Detention Center to serve the court order on Plaintiff. Defendant Conner met with Defendants Mason and Piercy to

5

inform them of the court order and the need to obtain a buccal swab DNA sample from Plaintiff. Plaintiff was brought to an area outside of the Control Room, where he was read the court order and given a copy. (Doc. No. 102 at ¶ 11; Doc. No. 99-7 at ¶ 5: Mason Decl.; Doc. No. 99-6 at ¶ 4: Piercy Decl.). Plaintiff refused to cooperate and began yelling and cursing at Defendants. (Doc. No. 102 at ¶ 11; Doc. No. 99-7 at ¶ 5; Doc. No. 99-6 at ¶ 5).

Defendant Conner attempted to obtain the buccal swab DNA sample with the assistance of Defendants Mason and Piercy. However, Plaintiff resisted and struggled against Defendants, causing the swab to become contaminated and unusable. Defendant Conner left the area to obtain another swab. When he came back, Defendants Mason and Piercy told him they could not assist him any further. Defendant Conner then left the detention center. (Doc. No. 99-7 at ¶ 8; Doc. No. 99-6 at ¶¶ 8-9).

The encounter was captured on the detention center surveillance camera, and the Court has reviewed the videotape footage of the incident. The entire encounter with Plaintiff lasted under one minute. In the beginning of the video, Plaintiff was brought into an area next to the Control Room, and he was seated on a bench. At some point, Defendants walked into the room, and Plaintiff stood up from the bench and began talking to Defendants. The video shows that at 8:57:12 a.m., Defendant Conner pulled out a buccal swab and walked over to Plaintiff. Plaintiff was still standing next to the bench. As Defendant approached, Plaintiff started walking further away from the bench. Defendant Conner firmly grabbed both of Plaintiff's arms, pulled him back to the bench, and placed him on the bench. Defendant Conner then held onto Plaintiff's right arm while Defendants Piercy and Mason stood over Plaintiff. After around fifteen seconds Defendant Conner walked away from Plaintiff with the swab in Defendant Conner's hand.

The video then shows Defendant Conner retrieving another buccal swab and walking

6

back to Plaintiff, who was still seated on the bench. Defendant Conner then firmly grabbed Plaintiff's head and attempted to place the buccal swab in Plaintiff's cheek. Plaintiff resisted, and Defendant Conner pushed Plaintiff's head back against the wall, while Defendants Piercy and Mason also grabbed Plaintiff and held him in place while Defendant Conner attempted to take the buccal swab from Plaintiff. Around 16 seconds elapsed during the time that Defendants Conner, Mason, and Piercy had their hands on Plaintiff while attempting to obtain the swab.

Defendant Conner was unable to obtain a buccal swab DNA sample. Defendant Conner reported the failure to obtain a buccal swab DNA sample to the Assistant District Attorney. Conner's supervisor, Sergeant Duncan, instructed Conner to obtain a search warrant for a blood DNA sample. (Doc. No. 102 at ¶ 15; Doc. No. 103 at ¶ 9). Later that same day, Cleveland County Superior Court Judge Nathaniel J. Poovey issued a search warrant, authorizing officials to draw Plaintiff's blood to obtain a DNA sample. (Doc. No. 102-5). On the same date, Sergeant Duncan served the search warrant on Plaintiff at the Cleveland County Detention Center. Plaintiff cooperated during the procedure to obtain a blood sample for DNA analysis. The DNA blood sample analysis was negative for Plaintiff, but he subsequently pled guilty to possession by a felon of the same firearm used in the 2008 shooting. According to Plaintiff, this guilty plea is currently on appeal. (Doc. No. 104-1 at 86-87: Ross Dep.).

Immediately after the incident at the Cleveland County Detention Center, Detention Center Nurse Teresa Smith examined Plaintiff and found no injuries. (Doc. No. 99-8 at ¶¶ 4-7: Smith Aff.). Because Plaintiff told Smith that the officers had slammed his head against the wall, Nurse Smith assessed the back of Plaintiff's head, but she "did not feel any knots in that area." (Id. at ¶ 6). According to Smith, Plaintiff "was not bleeding and did not appear to be in any distress." (Id. at ¶ 4). Smith stated that when she drew Plaintiff's blood the next day

7

pursuant to the search warrant, he "didn't mention anything about hitting his head against the wall, or that he was suffering any injuries as a result of the incident reported on the previous day." (Id. at ¶ 8).

## II.     STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56

provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

## III. DISCUSSION

### A. Plaintiff's Fourth Amendment Unreasonable Search Claim

The Court first addresses Plaintiff's claim that Defendant Conner's attempt to take a buccal swab to obtain Plaintiff's DNA violated his Fourth Amendment rights. As noted, Plaintiff was already in North Carolina state prison after being convicted of being a habitual felon when authorities determined that he was the suspect in an incident of discharging a firearm into an occupied dwelling. The victim had identified Plaintiff as the shooter. See (Doc. No. 102-1 at 16: SBI Lab Report; Doc. No. 102-5 at 5: Search Warrant). Before Defendant Conner attempted to get a buccal swab from Plaintiff, he obtained a court order, pursuant to N.C. GEN. STAT. § 15A-271, which provides that

> [a] nontestimonial identification order authorized by this Article may be issued by any judge upon request of a prosecutor. As used in this Article, 'nontestimonial identification' means identification by fingerprints, palm prints, footprints, measurements, blood specimens, urine specimens, saliva samples, hair samples, or other reasonable physical examination, handwriting exemplars, voice samples, photographs, and lineups or similar identification procedures requiring the presence of a suspect.

9

Id. § 15A-271. Under Section 15A-273:

> An order may issue only on an affidavit or affidavits sworn to before the judge and establishing the following grounds for the order:
> (1) That there is probable cause to believe that a felony offense, or a Class A1 or Class 1 misdemeanor offense has been committed;
> (2) That there are reasonable grounds to suspect that the person named or described in the affidavit committed the offense; and
> (3) That the results of specific nontestimonial identification procedures will be of material aid in determining whether the person named in the affidavit committed the offense.

Id. § 15A-273. Here, the Assistant District Attorney had filed a petition, seeking the court order authorizing the buccal swab, and attesting that Plaintiff was a suspect in the serious offense of discharging a firearm into occupied property. See (Doc. No. 102-4 at 3).

The Fourth Amendment protects prisoners from unreasonable searches, including the invasion of bodily privacy. Bull v. City & County of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010). Reasonableness is determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights the search entails. Bell v. Wolfish, 441 U.S. 520, 558-59 (1979). Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. Id. at 559.

The extraction of DNA implicates the Fourth Amendment. United States v. Kincade, 379 F.3d 813 (9th Cir. 2004). The Supreme Court has held that using a buccal swab on the inner tissues of a person's cheek to obtain DNA samples is a Fourth Amendment search. Maryland v. King, 133 S. Ct. 1958, 1980 (2013). In King, the Supreme Court found that a criminal defendant was not subjected to an unreasonable search and seizure when a sample of his DNA was taken, pursuant to the Maryland DNA Collection Act, following a lawful arrest for a serious offense

10

supported by probable cause. Id. The Supreme Court held that "[w]hen officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." Id. The King Court further observed that the search must be reasonable under the attendant circumstances. Id. at 1969.

Here, Defendant Conner attempted to perform the search at issue pursuant to a valid court order authorizing authorities to obtain a sample of Plaintiff's DNA using a buccal swab search.[2] (Doc. No. 102 at ¶ 4). Plaintiff's DNA was sought for the investigation into Plaintiff's alleged involvement of a 2008 shooting into an occupied dwelling. (Id. at ¶ 3). The court order authorizing the buccal swab noted that Plaintiff had been charged with discharging a weapon into an occupied dwelling and that Plaintiff was the primary suspect in that crime based on the victim's statement to police that Plaintiff was the person who shot into the residence. See (Doc. No. 102-4).

As noted, when the DNA extraction was attempted, Plaintiff was already in state prison after having been convicted of, among other things, being a habitual felon. While the DNA sample ultimately submitted by Plaintiff in this case did not match the DNA on the .410 shotgun used in the crime, Plaintiff did subsequently plead guilty to possession of that same firearm by a felon. (Doc. No. 104-1 at 86-87). The Court finds that, given the circumstances of this case, the minimal intrusion and minimal application of force upon Plaintiff in these circumstances did not

---

[2] N.C. GEN. STAT. § 15A-279 provides that "[n]ontestimonial identification procedures may be conducted by any law-enforcement officer or other person designated by the judge issuing the order." Thus, Defendant Conner was an authorized person to conduct the buccal swab although his name was not in the court order itself.

violate Plaintiff's Fourth Amendment Rights.

Furthermore, although the taking of a buccal swab was not authorized by a search warrant, the court order authorizing the buccal swab met the Fourth Amendment reasonableness requirement in that the order was issued by a detached and neutral judge based on a prosecutor's assertion that probable cause existed to show that Plaintiff had committed the serious crime of discharging a firearm into occupied property. Accord Bill v. Brewer, No. 13-15844, 2015 WL 5090744, at *5 (9th Cir. Aug. 31, 2015) (holding that the collection of police officers' DNA by buccal swab to exclude them as contributors of DNA at a homicide scene satisfied the Fourth Amendment's reasonableness requirement where the search was pursuant to a court order that satisfied the requirements of a warrant). In sum, for the reasons stated herein, the Court finds that Plaintiff has not raised a genuine dispute of material fact as to whether Defendants violated Plaintiff's Fourth Amendment rights in attempting, pursuant to a court order, to take a buccal swab of Plaintiff's DNA.

**B. Plaintiff's Eighth Amendment Excessive Force Claim**

In addition to contending that the attempted search itself violated the Fourth Amendment, Plaintiff also claims that, regardless of whether the search was authorized, Defendants used excessive force during the attempted search. Courts have authorized the use of reasonable force to obtain DNA when pursuant to a court order. See Rendelman v. Scott, 378 Fed. Appx. 309, 312 (4th Cir. 2010) (unpublished) ("[T]he State's right to obtain [a] DNA sample from designated inmates must necessarily carry with it the right to use a reasonable degree of force that is sufficient to ensure compliance. Otherwise, the State's right can be rendered meaningless by an inmate who refuses to grant permission for the cheek swab."); Sanders v. Coman, 864 F. Supp. 496, 500 (E.D.N.C. 1994) (confirming the State's right to obtain DNA by reasonable

force). Moreover, Defendant Conner was authorized to use reasonable force to obtain compliance with the court order under N.C. GEN. STAT. § 15A-279(b). However, only reasonable force is allowed—that is, even when officers have the authority to perform a search or seizure, the force used must still be reasonable.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986).[3] To establish an Eighth Amendment excessive force claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

In response to Defendants' summary judgment motions, Plaintiff contends that numerous facts are in dispute and thus preclude summary judgment, including whether Plaintiff threatened

---

[3] Plaintiff brings his claim as one for excessive force in violation of the Eighth Amendment, rather than as a Fourth Amendment excessive force claim. Because Plaintiff was a prisoner during the alleged excessive use of force, the Eighth Amendment, rather than the Fourth Amendment, would appear to apply to his excessive force claim. See Rendelman v. Scott, 378 Fed. App'x 309 (4th Cir. 2010) (unpublished).

to kill Defendants, whether Plaintiff was seated on the bench when Defendants used force against him, and whether Plaintiff's head hit the wall once or twice while Defendants were holding him. Plaintiff also claims that the video shows certain acts by Defendants. For instance, Plaintiff claims that "the video of the incident clearly show[s] Defendant Conner slamming the Plaintiff's head into the wall numerous times." (Doc. No. 113 at 3). Plaintiff also cites an incident report by Defendant Mason in which Mason stated that "Officer Conner had to go get another swab to take DNA from [Plaintiff] after he had contaminated the first one during the scuffle between [Defendant Conner] and [Plaintiff] where [Conner] slammed [Plaintiff's] head against the wall twice and I had Officer Piercy go call Captain Briscoe and ask if we could take [Plaintiff's] DNA by force." (Doc. No. 107-1 at 21). Defendant Piercy stated in his own incident report that

> [Plaintiff] was brought up to the hallway in front of the control room and sat on the bench. [Defendant Conner] then told [Plaintiff] that he will need to collect a DNA sample. [Plaintiff] refused and began to act out and start yelling. Officer Mason and I went out of the control room and asked [Plaintiff] to sit down and calm down. [Defendant Conner] then placed his hands on [Plaintiff] and pushed his head against the wall. Officer Mason and myself were trying to calm [Plaintiff] still during this time. I [] then took the paper work from Officer Conner and called Captain Briscoe. Briscoe advised me that [Defendant Conner] will have to go through the court system to obtain the DNA sample.

(Doc. No. 107-1 at 22). Plaintiff contends that Mason's and Piercy's incident report statements raise a dispute of fact as to whether Defendant Conner used excessive force against Plaintiff.

In support of their summary judgment motions, Defendants contend that there is no genuine dispute of fact as to whether Defendants used excessive force against Plaintiff. Defendants contend that, to the extent that Defendant Conner pushed Plaintiff's head against the wall, it was because Plaintiff was resisting Defendants' attempts to take a DNA sample with the buccal swab. Defendants contend that Conner's use of force, in response to Plaintiff's resistance

14

to Defendant Conner's efforts to take a sample of Plaintiff's saliva with the buccal swab, was reasonable. Finally, Defendants contend that the video of the incident conclusively demonstrates that none of the Defendants used excessive force against Plaintiff.

Plaintiff has raised a genuine dispute of fact as to whether excessive force was used against him. First, the video is not conclusive as to the excessive force issue. That is, the video does not blatantly contradict Plaintiff's claims so as to preclude a jury verdict. See Mack v. Howard, No. 11-CV-00303-A F, 2014 WL 2708468, at *1 (W.D.N.Y. June 16, 2014) (stating that "even when there is a video, courts must still draw reasonable inferences in the non-moving party's favor"); Cummings v. Klee, No. 14-10957, 2015 WL 1412601, at *5 (E.D. Mich. Mar. 26, 2015) ("[V]ideo cannot depict state of mind. Video is therefore rarely, if ever, conclusive on questions of intent, such as whether Defendants acted with the intent to cause Plaintiff harm. . . . In sum, Defendants have failed to establish that no reasonable jury could find that they acted objectively unreasonably in light of Plaintiff's clearly established right to be spared excessive force."). In other words, a reasonable juror could find that the video shows Defendant Conner "slamming" Plaintiff's head against the wall as Plaintiff contends he did. Indeed, Defendant Mason stated in his own incident report that Defendant Conner did, in fact, "slam" Plaintiff's head against the wall twice. (Doc. No. 107-1 at 21). Moreover, by Mason's own account, after Defendant Conner "slammed" Plaintiff's head against the wall, Defendants Mason and Piercy became concerned enough about the force being used against Plaintiff that they went to ask their supervisor if they were authorized to assist Defendant Conner in using force against Plaintiff. Furthermore, although Defendants contend that Plaintiff was resisting Defendant Conner's attempts to take the buccal swab, a reasonable jury could see the video and determine that Plaintiff was offering little resistance when Defendant Conner pushed Plaintiff's head against the

15

wall. In sum, Plaintiff has raised a genuine dispute of material fact as to whether Defendants used excessive force while attempting to take a buccal swab of Plaintiff's DNA.[4]

Next, as to Plaintiff's failure to intervene claim against Defendants Mason and Piercy, because the Court has determined that summary judgment is not appropriate as to Plaintiff's excessive force claim, the Court will likewise deny summary judgment as to Plaintiff's failure to intervene claim against Defendants Piercy and Mason.

Finally, Defendants contend that they are entitled to qualified immunity. When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 230-33 (2009). In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." Parrish v. Cleveland, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and internal quotation omitted). Here, adopting Plaintiff's version of the facts on summary judgment, it was well established at the time of the alleged incident that holding a prisoner down and slamming a prisoner's head twice against a wall, while the prisoner was handcuffed, shackled, and not resisting, would constitute excessive force. Moreover, as to Plaintiff's failure

---

[4] Plaintiff acknowledged in his deposition that neither Piercy nor Mason hit him while he was being restrained. See (Doc. No. 99-3 at 11). However, the Court leaves it to the jury to decide whether these Defendants used excessive force against Plaintiff while holding him down while Conner attempted to get the buccal swab.

16

to intervene claim, even if Defendants Mason and Piercy reasonably believed that the court order gave Defendant Conner the right to use reasonable force against Plaintiff in order to get his DNA, it would still have been clear to a reasonable officer that excessive force was not allowed. Thus, Defendants Mason and Piercy are not entitled to qualified immunity as to the failure to intervene claim.

Finally, the Court notes that Plaintiff has filed a motion requesting leave to amend his summary judgment motion upon receipt of discovery material. Plaintiff states that he seeks to submit the video as part of his summary judgment materials once he has reviewed it, and he also asks this Court not to make a ruling on summary judgment until the Court has viewed the video. This Court has viewed the video in addressing the parties' summary judgment motions. The motion is denied to the extent that the Court will not allow Plaintiff to amend his summary judgment motion at this time.[5]

## IV. CONCLUSION

In sum, the court grants Defendants' summary judgment motions as to Plaintiff's claim that the search itself violated the Fourth Amendment. The Court denies Defendants' summary judgment motions as to Plaintiff's excessive force and failure to intervene claims. To this extent, the Court denies Plaintiff's own summary judgment motion.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Conner's Motion for Summary Judgment, (Doc. No. 101), is **GRANTED** in part and **DENIED** in part, as there is a genuine dispute as to Plaintiff's excessive

---

[5] Plaintiff contends that the prison where Plaintiff is incarcerated has not allowed Plaintiff access to the video. Plaintiff, nevertheless, appears to have seen the video at least once because he makes assertions in his memorandum in opposition to Defendants' summary judgment motions as to what is shown in the video. See (Doc. No. 113).

force and failure to intervene claims.

2. Defendants Piercy's and Mason's Motion for Summary Judgment, (Doc. No. 99), is **GRANTED** in part and **DENIED** in part, as there is a genuine dispute as to Plaintiff's excessive force and failure to intervene claims.

3. Plaintiff's Motion for Summary Judgment, (Doc. No. 107), is **DENIED**.

4. Plaintiff's Motion Requesting Leave to Amend Summary Judgment upon Receipt of Discovery Material, (Doc. No. 108), is **DENIED**.

5. This Court finds that Plaintiff should have the assistance of counsel in preparing for trial. Within 20 days of this Order, Plaintiff shall notify the Court as to whether he intends to obtain counsel on his own, or whether he seeks appointment of counsel from the Court.

Frank D. Whitney
Chief United States District Judge